# DENVER & RIO GRANDE WESTERN R. CO. v. PUBLIC SERVICE COMMISSION et al.

No. 7597.   Decided April 20, 1951.   (230 P. 2d 557.)

See 51 C. J, Railroads, Sec. 944. Railroads crossing each other. 44 Am. Jur., Railroads, Sec. 283; 40 A. L. R. 712.

*Van Cott, Bagley, Cornwall & McCarthy,* Salt Lake City, for plaintiff.

*Bryan P. Leverich, M. J. Bronson, A. U. Miner, Howard Coray, and Dan Alsup,* all of Salt Lake City, for defendants.

LATIMER, Justice.

This matter is before us on a petition of the Denver & Rio Grande Western Railroad Company to review an order of the Public Service Commission of Utah, granting to the Union Pacific Railroad Company permission to construct, operate and maintain an industry track between Ninth South and Seventeenth South Streets, along Third West Street, in Salt Lake City, Utah. In this opinion the plaintiff, Denver & Rio Grande Western Railroad Company, will be referred to as Rio Grande; and the defendants, Union Pacific Railroad Company and Public Service Commission of Utah, will be referred to as Union Pacific and the Commission, respectively.

For a number of years, Union Pacific has operated over trackage running north and south between Second South and Ninth South Streets along Third West Street in Salt Lake City, Utah. From about 1946 Rio Grande has operated over a spur track which extended southwest from First West Street and intersected Third West Street near Fifteenth South Street. Because of expanding industrial activity in the area south of Ninth South Street, and at the request of various owners of property located in that area who wished to encourage and promote such expansion, Union Pacific proposed extending its trackage south to Seventeenth South Street. As one step in carrying out its plans, Union Pacific made application to the Salt Lake City Commission for a franchise to extend its trackage along Third West Street to Andrew Avenue, which avenue marks the boundary of the city limits. On November 1, 1949, the franchise was granted. Third West Street does not extend beyond Andrew Avenue, and it was Union Pacific's plan to continue the extension on to Seventeenth South

Street by acquiring rights-of-way from the owners of the property between Andrew Avenue and Seventeenth South Street. At a point between Fifteenth and Sixteenth South Streets, Union Pacific's proposed trackage would cross the spur track belonging to Rio Grande and an interchange track over which cars are exchanged between Rio Grande and the Bamberger Railroad Company. The spur and interchange tracks are located on the right-of-way owned by Rio Grande.

Section 76—4—15, U. C. A. 1943, grants the Commission the right to grant or deny one carrier permission to cross over the track of another carrier. The pertinent provisions of that section are as follows:

"(1) No track of any railroad shall be constructed across a public road, highway or street at grade, *nor shall the track of any railroad corporation be constructed across the track of any other railroad or street railroad corporation at grade*, nor shall the track of a street railroad corporation be constructed across the track of a railroad corporation at grade, *without the permission of the commission having first been secured;* provided, that this subsection shall not apply to the replacement of lawfully existing tracks. The commission shall have the right to refuse its permission or to grant it upon such terms and conditions as it may prescribe.

"(2) The Commission shall have the exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, use and protection of each crossing of one railroad by another railroad or street railroad * * *." (Emphasis added.)

To comply with the requirements of the above statute, Union Pacific on February 2, 1950, applied to the Commission for permission to construct, operate and maintain trackage over and across the intervening streets between Ninth South and Seventeenth South Streets, and for authority to extend its track over and across Rio Grande's spur track and the interchange track. Rio Grande opposed the extension urging that the area could be served either by Rio Grande or by both carriers without either having to cross over the tracks of the other. After a hearing on the merits, the Commission found against Rio Grande and

issued its order granting the permission sought by Union Pacific. It is this order which is now before us for review.

Plaintiff first contends that the order purports to grant to Union Pacific the right to enter upon, use and occupy its property without just compensation, which is in violation of the provisions of the state and federal Constitutions. Union Pacific admits the Commission has no power to convey rights in property, but contends that the order of the Commission is no more than a clearance authorizing Union Pacific to proceed by legal means to acquire the rights.

Under Section 76—4—15, U. C. A. 1943, supra, it was necessary for Union Pacific to receive permission from the Commission before extending its proposed industry trackage over and across the intervening streets and over Rio Grande's tracks. In its application Union Pacific requested that the Commission "grant authority and permission to applicant to construct, operate and maintain said spur or industry track across and over the Denver & Rio Grande Western Railroad Company spur track and the Denver & Rio Grande Western Railroad Company and the Bamberger Railroad Company interchange track." The Commission's order merely approved the application, granted authority to proceed as requested, and set out the conditions and limitations under which the crossings were to be installed, maintained and operated.

By instituting proceedings before the Commission, Union Pacific did not seek to acquire an easement or any other property right over Rio Grande's right of way. It merely sought the permission which the Commission, by statute, is required to give before crossings can be made, and which must be obtained before the point of crossing could be certain. The rights-of-way or easements, which Union Pacific must obtain in order to take advantage of the permission granted by the Commission must be obtained either

by purchase, condemnation, or by other appropriate proceedings before the proper tribunal. Questions involved in those proceedings are outside the scope of this review. Suffice it to say that the Commission has exclusive authority to permit the crossing of one railroad by another; that its grant of permission to Union Pacific to cross Rio Grande's tracks was within its authority; and that whatever further rights are needed before Union Pacific can complete its proposed extension must become the basis of a separate proceeding. However, the fact that other subsequent steps may be necessary to adjust the rights do not prohibit the Commission from performing its statutory duty of deciding questions preliminary to the final acquisition.

The plaintiff next argues that there is no substantial evidence that public convenience and necessity require Union Pacific to lay its tracks over and south of the proposed point of crossing. Defendant counters this argument by asserting that a finding of public convenience and necessity is not necessary to authorize a railroad to extend its trackage into contiguous areas. We need not decide the merits of defendant's contention as we are satisfied the record amply supports the findings of the Commission. From the evidence produced at the hearing, the Commission could reasonably conclude that the area involved is an industrial area, which offers attractive sites for heavy industries; that commercial concerns of Salt Lake City have been expanding industrially into that area; that further progress is threatened by the lack of railroad service; that cost of property contiguous to the present railroad rights-of-way, which are on the fringe of the undeveloped area, limits further development there; that prospective commercial users have made repeated inquiry as to the price and availability of the property sought to be serviced, but sales are not brisk due to lack of railroad connections; that constructions in the area will be facili-

tated by granting one or both of the two competing railroads the right to construct trackage so that railroad facilities can be made available to shippers; and that businesses already in the area desire and need the service.

The detailed evidence and the order of the Commission picture the history of progress. If the Commission is so restricted in its findings that it can not found public convenience and necessity on the needs of a few in the area and the anticipated needs of others in the future, then progress is retarded. That plaintiff's position is untenable can be gathered from the mere statement that if its concepts were to be adopted a railroad could not go into the area because public necessity does not yet exist; and, at the same time, public necessity could not be created because industries would be located elsewhere.

We conclude the Commission could rightly find that public convenience and necessity would be well served by the proposed construction. Undoubtedly, railroad service should be permitted to assist in developing this property. The Commission has decided that Union Pacific may tap the area and we find nothing in the record which requires or permits us to find otherwise.

The other contentions advanced by plaintiff have been considered by us and found to be without merit.

The order of the Commission is affirmed. Cost to defendants.

WOLFE, C. J., and WADE, McDONOUGH, and CROCKETT, JJ., concur.